**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TRITEQ LOCK & SECURITY LLC**, an Illinois Corporation, | **CIVIL ACTION NO. _____** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **INNOVATIVE SECURED SOLUTIONS, LLC, an Illinois Corporation and MICHAEL A. COHEN**, an Individual, | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, TriTeq Lock & Security LLC ("TriTeq"), by and through its undersigned attorneys, for its Complaint against Defendants, Innovative Secured Solutions, LLC ("ISS") and Michael A. Cohen ("Cohen") (collectively referred to herein as "Defendants"), alleges and states as follows:

## NATURE OF ACTION

1.      This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 *et seq*., for threatened or actual misappropriation of trade secrets arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*., breach of fiduciary duty, breach of contract, declaratory judgment of patent ownership, conversion, tortious interference, unfair competition, and usurpation of corporate opportunity.

## THE PARTIES

2.      Plaintiff TriTeq is an Illinois Limited Liability Company with its principal office at 701 Gullo Avenue, Elk Grove Village, Illinois.

3.     TriTeq designs, develops, manufactures, distributes, markets, and/or sells services and products relating to locking, security systems, access controls, hardware items, fixtures, fountain equipment for vending machines, safes, cabinets, tool storage, kiosks, and automotive applications.

4.     According to the records of the Secretary of State of Illinois, Defendant Innovative Secured Solutions, LLC (hereinafter referred to as "ISS") is a corporation organized and existing under the laws of Illinois, with its principal office at 114 S. Bloomingdale Road, Bloomingdale, IL 60108.  Defendant ISS also has a regular and established place of business in Illinois and this District at 720 Dartmouth Lane, Buffalo Grove, IL 60089.  Defendant ISS's customer service telephone number is (847) 419-7979.

5.     Upon information and belief, Defendant ISS's predecessor company is GMNCS LLC.

6.     Defendant Cohen is a citizen of Illinois, domiciled at 926 Cambridge Drive, Buffalo Grove, Illinois 60089.  Defendant Cohen is currently the Director of Engineering of Defendant ISS.  Defendant Cohen was employed and paid a salary by TriTeq from about October 3, 2006 through about November 13, 2009.  Until November 13, 2009, Cohen was a senior employee of TriTeq serving as a Senior Engineer.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over TriTeq's claims arising under the Computer Fraud and Abuse Act ("CFAA"), 18, U.S.C. § 1030, *et seq.*, pursuant to 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendant ISS.  Defendant ISS is registered to do business in the State of Illinois.  Defendant ISS also has a regular and established place of business in Illinois and this District at 720 Dartmouth Lane, Buffalo Grove, IL 60089, and is and has been doing business in Illinois and this District at all times relevant hereto.

9.     This Court has personal jurisdiction over Defendant Cohen.  Upon information and belief, at all times relevant hereto, Defendant Cohen resided in Illinois and in this District, has committed tortious acts in Illinois and this District.  Defendant Cohen's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) and (b).

## GENERAL ALLEGATIONS

11.     TriTeq is a leading innovator in the development, manufacturing, marketing, and sales of locking, electronic security systems, access controls, and hardware items for vending machines, safes, cabinets, tool storage, kiosks, and automotive applications.

### TriTeq's Proprietary Technologies

12.     TriTeq's confidential, proprietary and/or trade secret technologies associated with services and product technologies related to locks, vending machines, safes, medical cabinets, tool storage, kiosks, and automotive applications include, without limitation:  proprietary electronic security systems service and product technologies; proprietary wireless security service and product technologies; proprietary access controls designs, solutions, initiatives, and equipment; proprietary 3D latch mechanism designs; proprietary locking design specifications; proprietary software codes; proprietary locking development tools and data; proprietary "server files" recording the specific functions of TriTeq's employees; proprietary software files; TriTeq

3

virtual private software ("Solidworks"); and proprietary and unique confidential combinations and compilations of the above information (hereinafter referred to in the aggregate as "TriTeq's proprietary trade secrets and confidential information").

13.    TriTeq's proprietary trade secrets and confidential information are not generally known in the trade, and TriTeq derives economic value and a competitive advantage in the marketplace from the secrecy of such information.  Indeed, TriTeq's proprietary trade secrets and confidential information are TriTeq's lifeblood as a technology leader whose market position depends upon its innovations.

14.    TriTeq has invested considerable amounts of time and capital researching and developing its proprietary trade secrets and confidential information.

15.    At all times relevant hereto, TriTeq has used reasonable measures to protect the secrecy of its proprietary trade secrets and confidential information, including but not limited to: restricted access on a need-to-know basis; confidentiality policies; contractual confidentiality restrictions; password-protected computer and network platforms; and a wide array of additional physical security measures.

16.    For example, TriTeq has, at all times relevant hereto, required its employees, including Defendant Cohen, to sign confidentiality agreements.    Defendant Cohen's Employment Agreement reads in part:

> TriTeq is engaged in the design, manufacturing, and sale of lock and security products.  It is contemplated that TriTeq may be disclosing certain confidential and/or proprietary information without limitation: business records and plans, customer lists and records, trade secrets, technical information, bills of material, products, inventions, product design information, pricing structure, discounts, costs, computer programs and listings, Solidworks, Pro/E and/or CAD files, and other proprietary information (hereinafter referred to as "Information").  Each party agrees that the terms of this Agreement shall apply to any such confidential and/or proprietary information and/or trade secrets that may be used solely for the purpose of enabling the employee to perform their respective tasks (Purpose).

4

[E]ach party agrees that, for any such Information that is disclosed, Employee will:

(a) maintain the Information in confidence.

(b) not use any such information received from TriTeq except for the above-stated Purpose.

(c) disclose such Information received from TriTeq only as need to know such Information in order to fulfill the Purpose; and

(d) not disclose any portion of the Information received from TriTeq to any third party without the prior written consent of the disclosing party, even if such third party is under similar restriction on disclosure with such party.

Employee agrees to use the same degree of care to protect the confidentiality of all Information it receives as it uses to protect its own confidential and proprietary information which is [sic] does not wish to have published or disseminated. However, in no event shall employee use less than a reasonable degree of care to protect the Information received from TriTeq.

(EXHIBIT A).

17.    TriTeq maintains strict policies over its employees', including Defendant Cohen's, use of its information assets (including any information, tangible or intangible, physical or digital, that is owned or created by TriTeq, or is entrusted to TriTeq by a third party) and information resources (including technology hardware such as computers, servers, personal digital assistants, telephones, networks, routers, storage media, and the software supporting the hardware such as operating systems, database, and applications such as e-mail and services) owned by, leased to, or otherwise operated by TriTeq.

18.    TriTeq also requires its employees, including Defendant Cohen, to adhere to the non-compete policy that instructs employees:

[E]mployees are restricted from certain associations or working arrangements with competing or conflicting organizations.  Subject to TriTeq's prior written approval, you may work for other businesses during the course of your employment with TriTeq, provided, however, you may not (i) accept of perform work of a nature that conflicts or competes in any way with the business or services of TriTeq; (ii) use any TriTeq resources including, but not limited to, computer hardware and software, telephones, facsimile machines, and copiers, for or in connection with any non-TriTeq work; (iii) perform any non-TriTeq on

5

TriTeq premises; or (iv) peform any non-TriTeq work during normal business hours.

*Id.*

19.    Additionally, TriTeq's "Computer Policy" prohibits unauthorized use of TriTeq's secured computers, including, without limitation:

- Misrepresenting oneself or the Company;

- Storing files and/or data on portable memory devices without express permission; and

- Transferring files and/or data outside of TriTeq without express permission.

*Id.*

20.    At no time, did TriTeq authorize Defendant Cohen to disclose and/or utilize TriTeq's proprietary trade secrets and confidential information except for the benefit of TriTeq.

**<u>Defendant Cohen Misappropriates TriTeq's Trade Secrets and<br>Other Proprietary TriTeq Documents to GMNCS LLC</u>**

21.    In October of 2006, TriTeq employed Defendant Cohen as a mechanical engineer and later promoted him to a position as Senior Engineer, where he remained employed for the next three (3) years, until November of 2009.

22.    GMNCS LLC ("GMNCS") is a predecessor company of Innovative Secured Solutions, LLC ("ISS") with its principal office at 114 S. Bloomingdale Road, Bloomingdale, Il 60108 according to the records of the Secretary of State of Illinois.

23.    Upon information and belief, GMNCS had or continues to have a regular and established place of business in Illinois and this District at 720 Dartmouth Lane, Buffalo Grove, IL 60089.

24.     Upon information and belief, GMNCS is TriTeq's direct competitor in areas such as the design, development, and marketing of electronic security systems for use in medical, utility locks, vending, and architectural locks.

25.     In the course of his employment as a mechanical engineer, and later as Senior Engineer with TriTeq, Defendant Cohen had access to TriTeq's proprietary trade secrets and confidential information in the performance of his duties.

26.     TriTeq reposed a high level of trust and confidence in Defendant Cohen's trustworthiness, integrity, and fidelity to his obligations toward TriTeq.  These duties were memorialized in part through Cohen's executed "Employee Agreement" such as that attached herein as EXHIBIT A.

27.     In or before June of 2009 or shortly thereafter, without TriTeq's knowledge or consent, Defendant Cohen accepted employment with GMNCS, as demonstrated by an October 12, 2009 e-mail in which Defendant Cohen signed a mutual confidentiality agreement with Door and Window Guard Systems, LLC ("DAWGS") on behalf of GMNCS.  *See* EXHIBIT B. Defendant Cohen continued his employment with TriTeq until November of 2009, but never disclosed his simultaneous employment with GMNCS to TriTeq, nor sought approval from TriTeq for his simultaneous employment with GMNCS, in violation of the Employee Agreement.

28.     After accepting employment with GMNCS, on information and belief, Defendant Cohen intentionally, knowingly, with intent to defraud, accessed TriTeq's protected computers and obtained and transferred by e-mail, external hard drives, or thumb drives, valuable TriTeq proprietary trade secrets and confidential information, including, among other things, TriTeq's latch component designs, gear designs, keypad designs, and specifications, from TriTeq's

protected computers to his non-secure personal computer without authorization or exceeding his authorized access, without TriTeq's knowledge or consent, and in violation of Cohen's Employment Agreement with TriTeq.

29.     While Defendant Cohen was surreptitiously working for GMNCS and/or assisting GMNCS while employed by TriTeq, he was assigned to duties for TriTeq to develop, among other things, motorized electronic security lock designs, including latch components, gear components, and keypad designs for vending machines, safes, medical cabinets, tool storage, kiosks, and automotive applications.  TriTeq has not authorized Defendant Cohen to disclose and/or utilize said information except for the benefit of TriTeq.

30.     Defendant Cohen also was privy to TriTeq's price quotation and approval methods, its sales growth targets, research and development testing information, and new product innovation plans and rollout information.  TriTeq has not authorized Defendant Cohen to disclose and/or utilize said information except for the benefit of TriTeq.

31.     Upon suspecting Defendant Cohen's misappropriation of TriTeq's resources, including its confidential, proprietary and/or trade secret information, TriTeq installed software to surveillance Defendant Cohen's activities.  In doing so, TriTeq collected "Log files," which are highly valuable, confidential software files that allow a specific TriTeq computer's activities to be examined and deciphered.  Log files give detailed information about all of the activities of the software and hardware in that particular computer.

32.     At least between October 6, 2009 and November 6, 2009, or even sooner, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, transferred confidential and proprietary TriTeq trade secrets including, without limitation, motorized electronic security lock designs, including

latch components, gear components, and keypad designs to GMNCS by intentionally, knowingly, and with the intent to defraud, accessing TriTeq's protected computers.

33.     At least between October 6, 2009 and November 6, 2009, or even sooner, Defendant Cohen, on information and belief, also recklessly caused damage and loss by deleting at least some of TriTeq's proprietary trade secrets and confidential information in TriTeq's protected computers, including, without limitation, e-mails, Pro/E and CAD drawings depicting latch components, gear components, double door electronic lock designs, electronic kit designs, and keypad designs, thereby impairing their integrity and/or availability for TriTeq.

34.     Upon information and belief, Defendant Cohen frequently accessed TriTeq's protected computers from non-TriTeq computers beyond TriTeq's consent.  By accessing TriTeq's protected computers from one of non-TriTeq computers beyond his authorized access, on information and belief, Defendant Cohen, in furtherance of that fraud, repeatedly obtained valuable information from TriTeq's protected computers.

35.     Between July 30, 2009 and August 4, 2009, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, accessed TriTeq's virtual private software ("Solidworks") by intentionally, knowingly, and with intent to defraud TriTeq through TriTeq's protected computers and, in furtherance of that fraud, developed sub-components of locking systems ("G~Lock") described as "3Keypad, Lock face, Plastic Lock-LED, Plastic Keypad Holder, G-Lock-Keyboard."  Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop these sub-components of locking systems, in direct violation of Cohen's Employment Agreement with TriTeq.

36.     Between August 4, 2009 and October 1, 2009, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, accessed TriTeq's virtual private software ("Solidworks") by intentionally, knowingly, and with intent to defraud TriTeq through its protected computers and, in furtherance of that fraud, developed a part of gear components described as "10001, 10002, 10006, 10008, and 10009." Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop these part assemblies "10001, 10002, 10006, 10008, and 10009," in direct violation of Cohen's Employment Agreement with TriTeq.

37.     Between August 31, 2009 and October 20, 2009, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, accessed TriTeq's virtual private software ("Solidworks") by intentionally, knowingly, and with intent to defraud TriTeq through TriTeq's protected computers and, in furtherance of that fraud, developed a part of mechanical assemblies described as "10015, 10016, and 10017." Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop these part assemblies "10015, 10016, and 10017," in direct violation of Cohen's Employment Agreement with TriTeq.

38.     On September 23, 2009, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, accessed TriTeq's virtual private software ("Solidworks") by intentionally, knowingly, and with intent to defraud TriTeq through its protected computers and, in furtherance of that fraud, developed two gear designs for G~Lock for GMNCS. Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop these gear designs for GMNCS, in direct violation of Cohen's Employment Agreement with TriTeq.

39.     Upon further information and belief, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, Defendant Cohen, on information and belief, accessed TriTeq's virtual private software ("Solidworks") by intentionally, knowingly, and with intent to defraud TriTeq through its protected computers and, in furtherance of that fraud, surreptitiously developed the entire lock component design ("10000.tif" file) for GMNCS.  Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop this gear design for GMNCS, in direct violation of Cohen's Employment Agreement with TriTeq.

40.     On September 23, 2009, unbeknownst to TriTeq, Defendant Cohen sent the gear designs to an independent third party company, Five-Star Plastics, Inc. ("Five-Star"), and ordered to have it produce a plastic prototype of the gear designs.  A copy of the purchase order dated September 23, 2009 from Five-Star is attached hereto as EXHIBIT C.  Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had been working secretly to develop these gear designs for GMNCS, in direct violation of Cohen's Employment Agreement with TriTeq.

41.     On September 24, 2009, Five-Star Plastics shipped the finished prototype of the gear designs to Defendant Cohen.  A copy of the packing list dated September 24, 2009 from Five-Star Plastics is attached hereto as EXHIBIT D.  Upon information and belief, the prototype gears are one of the subcomponent parts for the G~Lock.  Defendant Cohen did not advise TriTeq at this or at any other time thereafter that he had obtained a finished prototype of the gear designs for GMNCS, in direct violation of Cohen's Employment Agreement with TriTeq.

42.     To conceal the depth of his deception and disloyalty to TriTeq, Defendant Cohen destroyed TriTeq's proprietary trade secrets and confidential information, *e.g.*, e-mails, 3D

drawings of aforementioned components in paragraphs 33-37, and impaired the integrity and availability of the TriTeq proprietary trade secrets and confidential information, thereby intentionally and recklessly causing damage and loss to the TriTeq protected computers.

43.     To further conceal the depth of his deception and disloyalty to TriTeq, on information and belief, Defendant Cohen stole the finished prototype of the gear designs received from Five-Star Plastics from TriTeq's premise.

44.     Upon information and belief, Defendant Cohen continued to access TriTeq's proprietary trade secrets and confidential information from TriTeq's protected computers through TriTeq's secure server system, intentionally, knowingly, and with an intent to defraud, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent.  Defendant Cohen, in furtherance of that fraud, obtained valuable information from TriTeq's protected computers and recklessly caused damage and loss by deleting at least some of TriTeq's proprietary trade secrets and confidential information in TriTeq's protected computers, thereby impairing their integrity and/or availability for TriTeq.

45.     Upon information and belief, Defendant Cohen intentionally, knowingly, and with the intent to defraud, accessed TriTeq's protected computers and downloaded valuable, proprietary and confidential TriTeq documents and technical specifications without TriTeq's knowledge or consent.  Even worse, Defendant Cohen in furtherance of that fraud, obtained valuable information from TriTeq's protected computers and recklessly caused damage and loss by deleting at least some of TriTeq's proprietary trade secrets and confidential information in TriTeq's protected computers, thereby impairing their integrity and/or availability for TriTeq.

46.     Many of the stolen documents and/or samples were TriTeq's confidential, proprietary or trade secret property, including detailed schematics relating to the motorized latch

12

assembly, gear systems relating to TriTeq's proprietary latch mechanism technology. If the TriTeq proprietary trade secrets and confidential information found in Defendant Cohen's possession were replicated by a competitor, TriTeq would suffer many hundred thousands of dollars in harm.

47.     To date, TriTeq has incurred substantial losses, in excess of $5,000 in a one-year period, due to Defendant Cohen's unauthorized access to TriTeq's protected computers and unauthorized removal, possession, and impairment of TriTeq's electronic files and documents, including, without limitation, the costs of investigating Defendant Cohen's actions and assessing the damage he caused.

48.     Upon information and belief, Defendant Cohen, without authorization or exceeding his authorized access, and without TriTeq's knowledge or consent, intentionally, knowingly, and with intent to defraud accessed TriTeq's protected computers and, in furtherance of that fraud, downloaded, uploaded and transferred valuable TriTeq proprietary trade secrets and confidential information for his own benefit and the benefit of others, by and through non-secure means into a non-secure environment, then destroyed TriTeq proprietary and trade secrets and confidential information to deceive TriTeq, thereby impairing the integrity and/or availability of such information.

49.     On November 12, 2009, Defendant Cohen advised TriTeq that he was resigning from his position with TriTeq. A true and accurate copy of the resignation letter is attached hereto as EXHIBIT E. Defendant Cohen did not advise TriTeq at this or at any other time that he had been working secretly for GMNCS since at least June 2009 or sooner.

50.     Upon information and belief, Defendant Cohen used TriTeq assets and TriTeq's proprietary research and development, proprietary software, development tools and other trade

secrets to develop and market a product, prepare and file patent applications, and used GMNCS to exploit and transfer TriTeq proprietary information to TriTeq's customers and potential customers.

51.     Upon information and belief, the products that Defendant Cohen attempted to sell on behalf of GMNCS were developed by TriTeq employees, including Defendant Cohen himself, at TriTeq's time and expense, and with the use of TriTeq's resources, including proprietary trade secrets and confidential information.

52.     Upon information and belief, without TriTeq's knowledge or consent, and exceeding his authorized access, on multiple occasions Defendant Cohen obtained valuable proprietary and trade secret information from TriTeq's protected computers and either uploaded the TriTeq information to his portable hard drive to transfer same to his non-secure computer or forwarded the TriTeq information to his personal e-mail account to access same using his non-secure computer.

53.     Upon information and belief, Defendant Cohen's non-TriTeq computers contained TriTeq's proprietary trade secrets and confidential information, and many of these files were stored on Defendant Cohen's non-TriTeq computers.

54.     On at least one occasion, the words "Copyright © 2009, TriTeq Lock & Security LLC" were removed from Pro/E or CAD drawing files and the otherwise identical file was transferred to GMNCS or to a third party without the copyright notice.

**Defendant Cohen Misappropriates TriTeq's Trade Secrets and Other Proprietary TriTeq Documents to Innovative Secured Solutions LLC**

55.     On November 9, 2009, TriTeq initiated a lawsuit against Gary S. Myers, a founder of GMNCS, for among other things, misappropriation of trade secrets, breach of

14

fiduciary duty, breach of contract, conversion, and more in the Circuit Court of Cook County, Case No. 09-CH-44101.

56.     On November 18, 2009, TriTeq successfully obtained a preliminary injunction order against Myers.  As a result, upon information and belief, the injunction order against Myers effectively ceased operation of GMNCS.

57.     On December 18, 2009, Defendant Innovative Secured Solutions, LLC ("ISS") was formed which, according to the records of the Secretary of State of Illinois, has the same principal office, agent, and managers as the now believed to be defunct GMNCS.  Also, both GMNCS and ISS have the identical customer service telephone number of (847) 419-7979.  In addition, both GMNCS and ISS have the same place of business in Buffalo Grove location.

58.     By virtue of the identical principal office, agent, managers, and customer service contact information, Defendant ISS or its predecessor company, GMNCS, operates in the same facilities in the Bloomingdale and Buffalo Grove locations in Illinois.

59.     Upon information and belief, Defendant Cohen commenced and has continued employment with Defendant ISS as the Director of Engineer, which is the same previously held position with GMNCS.

60.     Upon information and belief, Defendant ISS or its predecessor company GMNCS, like TriTeq, manufactures and custom fabricates electronic security locking systems and access control products for various industries.  Defendant ISS or its predecessor company GMNCS, competes with TriTeq in many areas, including on information and belief since Defendant Cohen's hire, the production of cloud lock and Smartphone security lock solution for, among other things, telecom enclosures, medical cabinets, utility locks, vending, and product enclosures.

15

61. Upon information and belief, Defendant ISS, like its predecessor company GMNCS, manufactures and distributes a locking systems identical to TriTeq's G~Lock as well as various component parts of same which are identical in all material respects to the parts produced by TriTeq.

62. Upon information and belief, since Defendant Cohen's hire, Defendant ISS benefitted from Defendant Cohen's disclosure of TriTeq's proprietary trade secrets and confidential information by manufacturing, marketing, and offering to sell derivative locking systems belonging to TriTeq to unfairly compete with TriTeq.

63. Defendant ISS, or its predecessor company GMNCS, was at all times aware that TriTeq's former employees such as Defendant Cohen possessed confidential, proprietary and/or trade secret information belonging to TriTeq. Upon information and belief, Defendant ISS, or its predecessor company GMNCS, was also aware that TriTeq's former employees such as Defendant Cohen were contractually bound by the Employment Agreement.

64. Upon information and belief, Defendant Cohen disclosed and/or utilized confidential, proprietary and/or trade secret information belonging to TriTeq to unfairly compete with TriTeq. Furthermore, upon information and belief, Defendant Cohen performs the same or substantially the same duties and functions as he performed while employed by TriTeq and to service the same customers and prospective customers to which Defendant Cohen was assigned while employed by TriTeq. It is thus inevitable that Defendant Cohen will disclose and/or utilize confidential, proprietary and/or trade secret information belonging to TriTeq in his position with Defendant ISS. Moreover, the actual and/or threatened disclosure and/or use and/or misappropriation of its confidential, proprietary and/or trade secret information by Defendant

16

Cohen has caused and will cause irreparable injury to TriTeq because it has lost and will lose customers it has spent years and significant resources obtaining and maintaining.

65.    Furthermore, on information and belief, Defendant ISS has not taken appropriate measures to prevent the misappropriation and disclosure of TriTeq's proprietary trade secrets and confidential information.

66.    According to a press release dated February 11, 2010, Defendant ISS will be attending the 2010 Annual Healthcare Information and Management Systems Society ("HIMSS") Conference & Exhibition on March 1-4, 2010, at the Georgia World Congress Center. A true and accurate copy of the press release entitled "Innovative Security Solutions Offers Solutions for Improved Healthcare Delivery at HIMSS10" is attached as EXHIBIT F.

67.    Upon information and belief, Defendant ISS will market, sell, and offer to sell its medical cabinet locking systems at the HIMSS--identical to the medical cabinet locking systems produced or contemplated by TriTeq. It is thus inevitable that Defendant ISS will encourage or has already encouraged Defendant Cohen to disclose and/or utilize confidential, proprietary and/or trade secret information belonging to TriTeq in his position with ISS to unfairly compete with TriTeq. Indeed, since his resignation from TriTeq, on information and belief, Defendant Cohen has actively used his knowledge of TriTeq's proprietary trade secrets and confidential information for the benefit of ISS.

68.    According to another press release dated February 12, 2010, Defendant ISS will be attending The International CTIA WIRELESS® Show on March 23-25, 2010, at the Las Vegas Convention Center. A true and accurate copy of the press release entitled "Innovative Security Solutions Launches Cloud Security Application at CTIA 2010" is attached hereto as EXHIBIT G.

69.     Upon information and belief, Defendant ISS will market, sell, and offer to sell, among other things, its locking systems for medical cabinets, telecom enclosures, vending, and/or product enclosures at the CTIA WIRELESS® Show--identical to the locking systems produced or contemplated by TriTeq for such products.  It is thus inevitable that Defendant ISS will encourage or has already encouraged Defendant Cohen to disclose and/or utilize confidential, proprietary and/or trade secret information belonging to TriTeq in his position with Defendant ISS to unfairly compete with TriTeq.  Indeed, since his resignation from TriTeq, on information and belief, Defendant Cohen has actively used his knowledge of TriTeq's proprietary trade secrets and confidential information for the benefit of Defendant ISS and/or its predecessor company GMNCS.

70.     By virtue of Defendants' unlawful conduct described hereinabove, TriTeq has already suffered serious and extensive economic and business injury, and if such conduct is not enjoined, TriTeq faces further injury which is immediate and irreparable.  The harm to TriTeq includes, but is not limited to, the misappropriation, misuse and disclosure of TriTeq's proprietary trade secrets and confidential information and the impairment of and interference with TriTeq's contractual relations with Defendant Cohen and customers.

### Cohen's Destruction of TriTeq's Company Records

71.     During Cohen's tenure with TriTeq, he was provided with a desktop computer to transact business with TriTeq's customers, potential customers and vendors in interstate commerce.  Among other things, Cohen utilized TriTeq's computer:  (i) to engage in e-mail communications; and (ii) to design, *e.g.*, gears and subcomponents for same associated with locking, electronic security systems, access controls, hardware items associated with such

electronic security systems, for vending machines, safes, medical cabinets, tool storage, kiosks, and automotive applications.

72.     In his capacity as Senior Engineer, Cohen was also granted access to, among other things, TriTeq's secured server and virtual private software ("Solidworks").

73.     After misappropriating TriTeq's confidential, proprietary and/or trade secret information, upon information and belief, on information and belief, Defendant Cohen attempted to wipe evidence of that misconduct from TriTeq's protected computer and server to render them unrecoverable.

74.     Between January 2009 and October 2009, on information and belief, Defendant Cohen selectively deleted various emails, attachments to those emails, designs belonging to TriTeq from the TriTeq computer which he was provided with to transact businesses with TriTeq's customers, potential customers and vendors in interstate commerce.   By way of example:

- Defendant Cohen deleted various drawings of gear component parts described as "10001, 10002, 10006, 10008, and 10009" from TriTeq's protected computer and server.

- Defendant Cohen deleted sub-component designs of locking systems described as "3Keypad, Lock face, Plastic Lock-LED, Plastic Keypad Holder, G-Lock-Keyboard" from TriTeq's protected computer and server.

- Defendant Cohen deleted drawings of mechanical assemblies described as "10015, 10016, and 10017" from TriTeq's protected computer and server.

- Subsequent to sending the gear designs bearing the part number of "SLA11122C" to Five-Star Plastics as described in paragraph 40 hereinabove, Defendant Cohen deleted said designs from TriTeq's protected computer and server.

75.    On several other occasions, on information and belief, Defendant Cohen selectively deleted various emails and attached files to those emails exchanged with one of TriTeq's customers, Carstens, Inc.  Such information gave TriTeq a competitive advantage and was not generally known to, or readily ascertainable by proper means by, other competitors.

76.    Upon information and belief, Defendant ISS has assigned Defendant Cohen to perform the same or substantially the same duties and functions as he performed while employed by TriTeq and to service the same customers, including Carstens, to which Defendant Cohen was assigned while employed by TriTeq.

77.    Upon information and belief, Defendant Cohen also selectively deleted various emails exchanged with one of TriTeq's customers that manufacture various vending machines. Such information gave TriTeq a competitive advantage and was not generally known to, or readily ascertainable by proper means by, other competitors.

78.    As a result of Defendant Cohen's misconduct in attempting to conceal his improper activities, TriTeq has been required to expend substantial funds, in excess of five thousand dollars, trying to retrieve its deleted and destroyed business records, including, among other things, ordering duplicate business records from various institutions, and maintaining an account with one of TriTeq's virtual private network providers in an attempt to retrieve deleted CAD drawings from such provider.

79.    TriTeq will never know how much and what information Defendant Cohen deleted, because he also selectively deleted the pertinent data contained on the TriTeq server—

the device used to back-up the computer that would have shown which data was deleted. Thus, Defendant Cohen rendered the computer useless because TriTeq can never know whether the data that Defendant Cohen did not delete was compromised in any way. Since Cohen selectively deleted and manipulated some data, while only partially deleting other data, TriTeq can have no assurance as to the integrity of the data that it was able to recover from the computer.

**COUNT ONE**
**COMPUTER FRAUD AND ABUSE ACT**
**(Against Defendant Cohen)**

80.     TriTeq repeats and realleges the averments of paragraphs 1-79 as if fully set forth herein.

81.     All computers used by Defendant Cohen without authorization or in excess of authorized access, or to destroy or impair TriTeq information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, Smartphone devices, and thumb drives, USB drives, and/or "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e). The TriTeq proprietary trade secrets and confidential information is stored on, and may be access from, one or more of these protected computers owned by TriTeq, access to which is strictly controlled via various security measures, including secret passwords, and all are used in or affect interstate or foreign communications or commerce.

82.     Defendant Cohen intentionally accessed the secure, protected computers of TriTeq or other protected computers without authorization or exceeding its authorization, and thereby obtained information from those protected computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

83.     Defendant Cohen knowingly and with the intent to defraud, accessed the secure, protected computers of TriTeq or other protected computers, or caused others to access the secure, protected computers of TriTeq, without authorization or in excess of its authorized access and in furtherance of the intended fraud obtained the valuable TriTeq proprietary trade secrets and confidential information and/or other valuable information or the valuable use of the secure TriTeq network and computers, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

84.     Defendant Cohen knowingly caused the transmission of a program, information, code, or command and/or intentionally accessed the protected computers of TriTeq and/or other protected computers, and as a result, intentionally and without authorization, recklessly caused damage and loss to the secure, protected computers of TriTeq and/or other protected computers in violation of 18 U.S.C. § 1030(a)(5)(A)-(C).

85.     Defendant Cohen, through his actions in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C), have caused TriTeq to incur losses for responding to and investigation of Defendant Cohen's misconduct, including damage and security assessments, in an amount presently unknown to TriTeq, but in good faith and reasonably believed to be exceeding five thousand dollars ($5,000.00) during a one-year period in violation of 18 U.S.C. § 1030(g) and (c)(4)(A)(i)(I); the investigation of such losses continues.

86.     In addition to an award of compensatory damages, TriTeq also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), restraining and enjoining Defendant Cohen and all others in privity, concert or participation with Defendant Cohen from engaging in such wrongful acts in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C).

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendants:

a.   enter judgment in favor of TriTeq on Count One;

b.   award both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.*, restraining and enjoining Defendant Cohen and all others in privity, concert or participation with him from engaging in acts and practices in violation thereof;

c.   award compensatory damages pursuant to 18 U.S.C. § 1030, *et seq.*, in an amount in excess of $5,000.00 to be proven at trial;

d.   enter an order compelling Defendant Cohen to return any and all of Plaintiff TriTeq's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendant Cohen's possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivatives and compilations and/or other memorializations; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

e.   enter an order compelling Defendant Cohen to disclose its actual and potential customers and any and all persons and entities to which Defendant Cohen disclosed TriTeq's proprietary trade secrets and confidential information; and

f.   such further relief as this Court may deem just and proper, in law or equity.

## COUNT TWO
## THREATENED OR ACTUAL MISAPPROPRIATION OF TRADE SECRETS
### (Against Cohen and ISS)

87.     TriTeq repeats and realleges the averments of paragraphs 1-86 as if fully set forth herein.

88.     The TriTeq proprietary trade secrets and confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

89.     At all times, TriTeq has taken reasonable measures to protect the TriTeq proprietary trade secrets and confidential information, and TriTeq derives economic value and competitive advantage from such information not being generally known to the public or trade.

90.     There exists the threatened or actual misappropriation of trade secrets by the Defendants to acquire, disclose and/or use, by improper means, the TriTeq proprietary trade secrets and confidential information for his own benefit and/or the benefit of others without or exceeding TriTeq's authorization and consent.

91.     TriTeq has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct result of Defendants' threatened or actual misappropriation of the TriTeq proprietary trade secrets and confidential information.

92.     Defendant Cohen's employment with Defendant ISS has resulted in the actual and/or threatened misappropriation of proprietary trade secrets and confidential information by said defendants in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

93.     Defendants' threatened or actual misappropriation of the TriTeq proprietary trade secrets and confidential information has been willful and malicious and entitles TriTeq to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

94.     TriTeq also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the TriTeq proprietary trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.   enter judgment in favor of TriTeq on Count Two;

b.   both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq*. restraining and enjoining Defendants, their officers, directors, employees, agents, and all those in privity, concert or participation with them from the threatened or actual misappropriation of the TriTeq proprietary trade secrets and confidential information;

c.   both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq*. restraining and enjoining Defendants, and all those in privity, concert or participation with him from the threatened or actual misappropriation of the TriTeq proprietary trade secrets and confidential information;

d.   a finding that Defendants acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, *et seq*., and that such acts and conduct are and have been willful and malicious;

e.   compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions;

f.   an order compelling Defendants to return any and all of TriTeq's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code,

designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

g.   an order compelling Defendants to disclose its actual and potential customers and any and all persons and entities to which Defendants disclosed TriTeq's proprietary trade secrets and confidential information;

h.   attorneys' fees and costs pursuant to 765 ILCS 1065/1, *et seq*.; and

i.   such further relief as this Court may deem just and proper, in law or equity.

**COUNT THREE**
**BREACH OF FIDUCIARY DUTY**
**(Against Cohen)**

95.   TriTeq repeats and realleges the averments of paragraphs 1-94 as if fully set forth herein.

96.   Defendant Cohen held positions of trust and confidence with TriTeq, and he owed TriTeq a duty of loyalty as TriTeq's employee.

97.   Defendant Cohen abused his position of trust and confidence with TriTeq to further his private interests, failed to protect the corporate property of TriTeq, and deprived TriTeq of profit or advantages in the marketplace.

98.   Defendant Cohen by his actions violated the duty of loyalty required of him as employee of TriTeq not to engage in competition with TriTeq while employed by TriTeq.

99.   Defendant Cohen acted with fraud, oppression, and/or malice.

100.     TriTeq has sustained losses and damages as a direct and proximate result of Defendant Cohen's wrongful actions described herein in an amount to be determined at trial.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.   enter judgment in favor of TriTeq on Count Three;

b.   compensatory damages, including disgorgement, for the breach of fiduciary duty by Defendant Cohen;

c.   exemplary damages for the acts constituting breach of fiduciary duty committed with fraud, oppression, and/or malice; and

d.   such further relief as this Court may deem just and proper, in law or equity.

### COUNT FOUR
### USURPATION OF CORPORATE OPPORTUNITY
### (Against Cohen)

101.     TriTeq repeats and realleges the averments of paragraphs 1-100 as if fully set forth herein.

102.     Defendant Cohen held positions of authority and trust at TriTeq, and were entrusted with TriTeq's proprietary trade secrets and confidential information.

103.     Defendant Cohen owed certain fiduciary duties to TriTeq on account of his position at TriTeq.

104.     Defendant Cohen used TriTeq's proprietary trade secrets and confidential information for his own benefit, both before and after the resignation of his employment from TriTeq.

105.     Defendant Cohen failed to disclose business opportunities to TriTeq and, instead, diverted opportunities that were developed through the use of TriTeq assets to his new employer.

106.    Defendant Cohen's conduct violated his duty of loyalty to his employer, TriTeq, and his obligation to act in the best interest of TriTeq.

107.    Defendant Cohen's breaches of his fiduciary duty were a proximate cause of injury to TriTeq.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.    enter judgment in favor of TriTeq on Count Four;

b.    award compensatory damages in an amount to be determined at trial;

c.    order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Defendant Cohen from the breach of his fiduciary duties to TriTeq;

d.    award punitive damages for the acts constituting breach of fiduciary duty committed with fraud, oppression and/or malice in an amount sufficient to punish Defendant Cohen and deter such misconduct in the future;

e.    order restitution and forfeiture of all compensation and benefits paid to Defendant Cohen by TriTeq during the period of the breach of Defendant Cohen's loyalty to TriTeq; and

f.    such further relief as this Court may deem just and proper, in law or equity.

### COUNT FIVE
### DECLARATORY JUDGMENT OF PATENT OWNERSHIP
### (Against Cohen and ISS)

108.    TriTeq repeats and realleges the averments of paragraphs 1-107 as if fully set forth herein.

109.    Defendant Cohen's employment responsibilities at TriTeq included assisting in the development of innovative electronic security system technologies for vending machines,

safes, cabinets, tool storage, kiosks, and automotive applications, including the conception and design of distributed wireless access control systems, methods and devices.

110.    Upon information and belief, beginning in or before June 2009, Defendant Cohen began planning patent filings on behalf of GMNCS for inventions, innovations or ideas that he developed or conceived during his employment at TriTeq, and which related to the actual or anticipated business activities of TriTeq, and/or which resulted from or were suggested by work which Cohen did for TriTeq.  Indeed, a press release issued on November 25, 2009 states that GMNCS "will provide its innovative *patent pending* security technology, the G~Lock, to the consumer electronics, telecommunications, real estate and pharmaceutical spaces [ ] in Las Vegas at the 2010 Consumer Electronics Show (CES)."   A true and accurate copy of the November 25, 2009 press release is attached hereto as EXHIBIT H (emphasis added).

111.    Defendant Cohen used TriTeq's offices, equipment, laboratories, other facilities, supplies, materials, and/or subordinates' time to substantially complete the inventions, including the G~Lock, developed and conceived during his employment at TriTeq.

112.    Defendant Cohen failed to disclose his inventions, innovations and ideas to TriTeq, and further failed to submit records of these inventions to TriTeq, as required by his agreements with TriTeq and his fiduciary duties to TriTeq.

113.    On information and belief, Defendant ISS or its predecessor company GMNCS is the assignee of certain patent applications disclosing and claiming a security system, method and device for vending machines, safes, cabinets, tool storage, kiosks, and automotive applications architecture (hereinafter the "Patent Applications").

114.    On information and belief, at least one of the named inventor(s) listed on the Patent Applications is Defendant Cohen.

29

115.    On information and belief, each of the inventions, disclosed and claimed in the Patent Applications were developed and/or conceived by Cohen with others at TriTeq, during the term of his employment at TriTeq.

116.    Despite a diligent search on the United States Patent and Trademark Office ("USPTO"), TriTeq cannot locate any patent applications filed by or on behalf of Defendants because applications for patents are kept in confidence by the USPTO for a period of 18 months from the earliest filing date and no information concerning the same is given without authority of the applicant or owner pursuant to 35 U.S.C. § 122.

117.    Based upon the November 25, 2009 press release, however, there is an actual and justiciable controversy regarding the rightful owner of the invention or inventions disclosed and allegedly claimed in the Patents Applications.

118.    TriTeq is entitled to a declaration that the inventions disclosed and claimed in the Patent Applications were previously assigned to TriTeq by at least one of the inventors Cohen.

119.    TriTeq thus seeks a declaration from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, that TriTeq is the rightful owner of the Patent Applications.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.   enter judgment in favor of TriTeq on Count Five;

b.   a declaration that TriTeq owns all right, title and interest to the invention or inventions disclosed and claimed in the Patent Applications, and any patent, continuation patent, or divisional patent that may issue therefrom;

c.   order Defendants to make a full and complete disclosure to TriTeq of the invention or inventions disclosed in the Patent Applications;

d.  order Defendant Cohen to assign to TriTeq all of their right, title and interest in the Patent Applications, and any patents issuing from such applications and all worldwide right, title and interest to the invention disclosed therein;

e.  enter a preliminary and permanent injunction enjoining Defendants and other persons in active concert with them, from employing the methods, or from making, using, offering to sell or selling, or importing into the United States, the apparatus claimed in the Patents Applications as of the issue date of any patent which issues from such applications; and

f.  grant such other and further relief as this Court deems appropriate under the circumstances.

### COUNT SIX
### BREACH OF CONTRACT
### (Against Cohen)

120.    TriTeq repeats and realleges the averments of paragraphs 1-119 as if fully set forth herein.

121.    In consideration of his employment at TriTeq and the salary and wages paid to him by TriTeq, on October 3, 2006, Defendant Cohen voluntarily executed an Employment Agreement with TriTeq.

122.    In the Employment Agreement, Defendant Cohen agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by TriTeq, any confidential information of TriTeq, or TriTeq's customers and suppliers.

123.    In the Employment Agreement, Cohen assigned to TriTeq the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Cohen during his employment at TriTeq, as follows:

[Y]ou agree to assign and, upon its creation, automatically assigns to TriTeq the ownership of such material, including any copyright or other intellecual property rights in such materials, without the necessity of any further consideration.

(EXHIBIT A).

124.    In the Employment Agreement, Cohen further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of TriTeq, and to provide TriTeq assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

125.    Also, in the Employment Agreement, Defendant Cohen further agreed to use TriTeq's computer resources and systems only for management-approved business purposes.

126.    In the Confidential Information section of the Employment Agreement, Cohen further agreed not to copy, disclose or use any confidential or proprietary information which is owned by or entrusted to TriTeq except to perform his job responsibilities.

127.    Defendant Cohen has breached his agreements with TriTeq by copying, using and/or disclosing TriTeq's confidential and proprietary information for purposes other than in the performance of his job duties for TriTeq, and by retaining, using and disclosing TriTeq confidential and proprietary information to ISS or its predecessor company GMNCS, and other third parties, and by working for GMNCS, during the term of his employment by TriTeq without disclosing the conflict of interest to TriTeq or obtaining the prior approval of TriTeq.

128.    Cohen has further breached his agreements with TriTeq by, on information and belief, failing to assign to TriTeq the rights, title and interest in the inventions disclosed and claimed in the Patent Applications, and instead assigning the Patent Applications to GMNCS or other third parties.

129.     TriTeq has been injured by Cohen's breaches of the foregoing agreements.

130.     Cohen's failure to disclose to TriTeq the inventions, innovations or ideas that he developed or conceived while working for TriTeq has caused, and will continue to cause, irreparable harm to TriTeq, for which there is no adequate remedy at law.

131.     Cohen's failure to submit records of his inventions to TriTeq or to provide TriTeq assistance in obtaining patents and other legal protection has caused, and will continue to cause, irreparable harm to TriTeq, for which there is no adequate remedy at law.

132.     Cohen's failure to assign the inventions to TriTeq has caused, and will continue to cause, irreparable harm to TriTeq, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.   enter judgment in favor of TriTeq on Count Six;

b.   award compensatory damages in an amount to be determined at trial;

c.   order restitution and forfeiture of all compensation and benefits paid to Defendant Cohen by TriTeq during the period of the breach of Defendant Cohen's loyalty to TriTeq;

d.   order specific performance by Cohen to comply with and satisfy his contractual obligations to TriTeq;

e.   imposition of a constructive trust in favor of TriTeq over all revenues or other benefits derived from the Patent Applications; and

f.   such further relief as this Court may deem just and proper, in law or equity.

**COUNT SEVEN**
**CONVERSION**
**(Against Cohen and ISS)**

133.    TriTeq repeats and realleges the averments of paragraphs 1-132 as if fully set forth herein.

134.    TriTeq is the true and rightful owner of TriTeq's confidential and proprietary information.

135.    By improperly utilizing this information for their own benefit, Defendants have deprived TriTeq of its exclusive, confidential, proprietary and trade secret rights and interests in the foregoing information.

136.    TriTeq has not authorized Defendants to improperly use the foregoing information.

137.    As a result of Defendants' conversion, which was perpetrated with actual malice, TriTeq is entitled to punitive damages.

WHEREFORE, Plaintiff TriTeq respectfully requests that this Court enter the following relief against Defendant Cohen:

a.    enter judgment in favor of TriTeq on Count Seven;

b.    order, restrain, and enjoin Defendants from receiving or converting TriTeq assets for any use, purpose or benefit by Defendants, or other third parties;

c.    order, restrain, and enjoin Defendants from exploiting intellectual property and trade secrets already obtained from TriTeq;

d.    continuing to enforce the Cohen's Employment Contract;

e.    award TriTeq the full market value of all intellectual property wrongfully in Defendants' possession; and

f.    such further relief as this Court may deem just and proper, in law or equity.

## COUNT EIGHT
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against Cohen and ISS)

138.   TriTeq repeats and realleges the averments of paragraphs 1-137 as if fully set forth herein.

139.   When it hired Cohen, both ISS and its predecessor company GMNCS knew that Cohen had signed an Employment Agreement with TriTeq.  Notwithstanding this knowledge, ISS knowingly and purposefully, and with an improper motive, accepted and used information from Cohen that it knew belonged to TriTeq, was confidential and proprietary to TriTeq, and was subject to a TriTeq Employment Agreement.

140.   TriTeq also had valid business relationships with various customers serviced by Defendant Cohen during the term of Defendant Cohen's employment with TriTeq, and TriTeq reasonably expected said business relationships to continue into the future.

141.   Defendants knew of TriTeq's valid business relationships with some or all of the customers serviced by Defendant Cohen during the term of Defendant Cohen's employment with TriTeq and knew that TriTeq reasonably expected said business relationships to continue into the future.

142.   Defendants have intentionally, willfully, and maliciously interfered with the business relationships described above such that Defendants' actions, which were designed to benefit them and harm TriTeq, constitute tortious interference with TriTeq's Employee Agreement with Cohen and customers, for which TriTeq is entitled to damages, including the imposition of punitive damages.

WHEREFORE, TriTeq requests the following relief:

    a.   enter judgment in favor of TriTeq on Count Eight;

35

b.   order, restrain, and enjoin Defendant Cohen from having contact with any customer or prospective customer with whom Defendant Cohen had contact while an employee of TriTeq;

c.   order, restrain, and enjoin Defendant Cohen from having any contact, sending any e-mails, or giving any electronic media or other documentation to employees or agents of Defendant ISS engaged in any line of business that competes or plans to compete with TriTeq;

d.   order, restrain, and enjoin any employee of Defendant ISS who had access to any of the alleged proprietary trade secrets and confidential information at issue from having contact with any customer or prospective customer with whom Defendant Cohen previously had contact while an employee of TriTeq about a product that competes or plans to compete with TriTeq;

e.   order, restrain, and enjoin Defendants, and all other persons or entities acting in concert with them or on their behalf from directly or indirectly soliciting, inducing, recruiting, encouraging, assisting, advising or directing any individual who possesses or has access to TriTeq's proprietary trade secrets and confidential information to work for ISS; and

f.   such further relief as this Court may deem just and proper, in law or equity.

## COUNT NINE
## COMMON LAW UNFAIR COMPETITION
### (Against Cohen and ISS)

143.   TriTeq repeats and realleges the averments of paragraphs 1-142 as if fully set forth herein.

144.   By taking, possessing and/or using TriTeq's proprietary trade secrets and confidential information, without any right to it, contractual or otherwise, Defendants are competing unfairly against TriTeq by offering products and services to customers based on misappropriated TriTeq proprietary trade secrets and confidential information.  Such conduct is

36

likely to deceive a substantial portion of customers and potential customers, and likely to influence the purchasing decisions of potential customers, to the harm and detriment of TriTeq.

145.    Defendants' actions were intentional, willful, outrageous and malicious, and justify the imposition of punitive damages.

WHEREFORE, TriTeq requests the following relief:

a.   enter judgment in favor of TriTeq on Count Nine;

b.   order, restrain, and enjoin Defendants from disclosing to anyone, including but not limited to, officers, employees, agents, representatives, contractors, customers and prospective customers the proprietary trade secrets and confidential information of TriTeq; and

c.   such further relief as this Court may deem just and proper, in law or equity.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38(b), TriTeq respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

DATED:  February 25, 2010             Respectfully Submitted,


s/Edward L. Bishop/
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
BISHOP & DIEHL, LTD.
1320 Tower Road
Schaumburg, IL 60173
Tel:  (847) 925-9333
Fax:  (847) 925-9337

*Attorneys for Plaintiff TriTeq Lock & Security LLC*