IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRITEQ LOCK & SECURITY LLC, an Illinois Corporation, <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE SECURED SOLUTIONS, LLC, an Illinois Corporation, GARY L. MYERS, an Individual, and MICHAEL A. COHEN, an Individual, <br><br> Defendants. | Civil Action No. 10 CV 1304 <br><br> Hon. Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Defendants Innovative Secured Solutions, LLC, Gary L. Myers ("Myers"), and Michael A. Cohen's ("Cohen") (collectively, "Defendants") motion to dismiss Plaintiff Triteq Lock & Security LLC's ("TriTeq") Second Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for sanctions under Rule 11. For the following reasons, the motion is granted in part and denied in part.

**I. BACKGROUND**

The parties have long been engaged in contentious and protracted litigation, proceeding in both the Illinois state court and federal court. On November 9, 2009, William Denison ("Denison") and Calin V. Roatis ("Roatis"), individually and derivatively on behalf of TriTeq, filed a complaint in Illinois state court against Myers alleging misappropriation of trade secrets in violation of the Illinois Trade Secret Act ("ITSA"), breach of fiduciary duty, breach of duty of

loyalty, breach of contract, and conversion of TriTeq's intellectual property. On November 18, 2009, the state court entered a preliminary injunction against Myers, that, among other things, enjoined Myers from conducting any business on behalf of TriTeq and terminated him as TriTeq's president and manager, and ordered that Dension and Roatis conduct the future business of TriTeq as the two sole managers. Nonetheless, on February 15, 2010, TriTeq initiated the instant federal lawsuit. The federal lawsuit, while not identical, pertains to many of the same legal issues as the state proceedings.

On July 21, 2011, TriTeq was granted leave to file a Second Amended Complaint to amend its declaratory judgment claim and to add a copyright claim. TriTeq availed itself of this opportunity. TriTeq's Second Amended Complaint alleges violations of the Computer Fraud Abuse Act ("CFAA") (Count I), misappropriation of trade secrets in violation of the ITSA (Count II), breach of fiduciary duty (Count III), usurpation of corporate opportunity (Count IV), declaratory judgment of patent application ownership (Count V), breach of contract (Count VI), conversion (Count VII), tortious interference with contractual relations (Count VIII), common law unfair competition (Count IX), and copyright infringement (Count X). On August 22, 2011, Defendants filed the instant motion to dismiss TriTeq's Second Amended Complaint and for sanctions. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standards of Decision

#### 1. *Lack of Subject Matter Jurisdiction—Rule 12(b)(1)*

When considering a facial challenge under Rule 12(b)(1) for lack of subject matter jurisdiction, the motion is analyzed the same as any other motion to dismiss. United Phosphorus,

Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003) (en banc). That is, a court must "accept[] as true all facts alleged in the well-pleaded complaint and draw[] all reasonable inferences in favor of the plaintiff." Scanlan v. Eisenberg, No. 11-1657, 2012 WL 169765, at *3 (7th Cir. Jan. 20, 2012) (citing Family & Children's Ctr., Inc. v. Sch. City of Mishawaka, 13 F.3d 1052, 1057 (7th Cir. 1994)). If the complaint, however, is "formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." United Phosphorus, Ltd., 322 F.3d at 946. The burden of proof is on the party seeking to establish jurisdiction. Id.

### *2. Failure to State a Claim Upon Which Relief Can Be Granted—Rule 12(b)(6)*

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the sufficiency of the complaint. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, a plaintiff's allegations must raise its "right to relief above the speculative level." Id. at 555 (citation omitted). The Court construes the complaint "in the light most favorable to the plaintiff[], accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiff['s] favor." Adkins v. VIM Recycling, Inc., 644 F.3d 483, 492-93 (7th Cir. 2011) (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997)). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief.'" Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (quoting Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir.

1999)). "Finally, a complaint must allege facts bearing on all material elements 'necessary to sustain a recovery under some viable legal theory.'" Looper Maint. Serv. Inc. v. City of Indianapolis, 197 F.3d 908, 911 (7th Cir. 1999) (quoting Herdrich v. Pegram, 154 F.3d 362, 369 (7th Cir. 1998)).

**B. TriTeq's Declaratory Judgment Claim (Count V)**

In Count V, TriTeq seeks declaratory judgment of patent application ownership, thus attempting to trigger exclusive federal jurisdiction under 28 U.S.C. § 1338. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the Declaratory Judgment Act provides a remedy, it is not "an independent grant of federal subject-matter jurisdiction." DeBartolo v. Healthsouth Corp., 569 F.3d 736, 741 (7th Cir. 2009) (citing Samuel C. Johnson 1988 Trust v. Bayfield Cnty., 520 F.3d 822, 827-28 (7th Cir. 2008)); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950). Section 1338(a), however, confers original jurisdiction in any civil action "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a).

"[W]hether a case 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . .'" Holmes Group, Inc. v. Vornado Air Circulation Sys. Inc., 535 U.S. 826, 830 (2002) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988)). In other words, "[t]he plaintiff's well-pleaded complaint must "establis[h] either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law.'" Id.

4

(quoting Christianson, 486 U.S. at 809) (second alteration in original). With these principles in mind, the Court turns to TriTeq's Second Amended Complaint.

According to TriTeq, "Defendants Myers and/or Cohen failed to disclose their inventions, innovations and ideas to TriTeq, and further failed to submit records of these inventions to TriTeq, as required by their agreements with TriTeq and their fiduciary duties to TriTeq." Second Am. Compl. ¶ 140. Despite conceding that TriTeq cannot locate any patent applications filed by or on behalf of Defendants, id. ¶ 152, TriTeq nonetheless asserts that the inventions disclosed and claimed in the patent applications should have been automatically assigned to it, id. ¶ 154. TriTeq's Second Amended Complaint establishes neither that federal patent law creates a cause of action for determining ownership of pending patent applications, nor that TriTeq's alleged ownership of patent applications depends on resolution of a substantial question of federal patent law. The parties' underlying ownership dispute is one of contract law, not patent law.

A contract dispute about ownership does not arise under federal patent law. See Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc., 660 F.3d 281, 284 (7th Cir. 2011) ("Judge Friendly's famous opinion in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), holds that controversies about contracts that allocate ownership of copyrights arise under the contract, not the copyright laws. This circuit has adopted that approach for trademarks as well as copyrights. It is logically applicable to all intellectual property, including patents." (citations omitted)). TriTeq's invocation of § 1338 is merely an attempt at "'artful pleading' in an effort to create a federal issue that is not really there." Int'l Armor & Limousine Co. v. Moloney Coachbuilders, 272 F.3d 912, 915 (7th Cir. 2001). Because the parties' ownership dispute is really a contract

dispute that arises under state law, TriTeq cannot establish federal jurisdiction under § 1338 to support its declaratory judgment claim.

Even if TriTeq could establish that this dispute arises under federal patent law, the claim still fails because TriTeq cannot satisfy the case or controversy requirement of Article III. To establish a justiciable controversy, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937)) (alteration in original). In other words, the facts alleged, under all the circumstances, must show that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (internal quotation marks and citation omitted) (footnote omitted).

Declaratory judgement controversies in the patent context require "[t]he existence of issued and presently enforceable patent claims against a declaratory judgment plaintiff." Pfizer, Inc. v. Ranbaxy Labs., Ltd., 525 F. Supp. 2d 680, 686 (D. Del. 2007). Indeed, absent action by the patentee, the "mere existence of a potentially adverse patent does not cause an injury nor create an imminent risk of an injury" sufficient "to establish declaratory judgment jurisdiction." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1338 (Fed. Cir. 2008) (citation omitted). Plaintiff's declaratory judgment claim is based on its perception and mere speculation regarding unknown and unidentified pending patent applications. Thus, TriTeq has failed to allege a controversy of sufficient "immediacy and reality" to establish declaratory judgment jurisdiction.

Accordingly, Count V is dismissed.

**C. TriTeq's Copyright Infringement Claim (Count X)**

Count X alleges that "Defendants' publication and dissemination of Triteq's diagrams and graphic depictions without Triteq's authorization or consent infringes Triteq's copyrighted works." Second Am. Compl. ¶ 181. To state a claim for copyright infringement, a plaintiff must allege: (1) ownership of the copyright; (2) copyright registration (unless the work is a foreign work, the alleged infringement concerns rights of attribution and integrity of a work of visual art, or the plaintiff attempted to register the work and registration was refused); and (3) infringement. See Mid Am. Title Co. v. Kirk, 991 F.2d 417, 421 n.8 (7th Cir. 1993) (citation omitted); Villa v. Pearson Educ., Inc., No. 03 C 3717, 2003 WL 22922178, at *2 (N.D. Ill. Dec. 9, 2003) (citing Sweet v. City of Chi., 953 F. Supp. 225, 227 (N.D. Ill. 1996)); see also Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1243-49 (2010) (holding that the copyright registration requirement, 17 U.S.C. § 411(a), "does not restrict a federal court's subject-matter jurisdiction," rather, with limited exceptions, it is a "precondition to filing suit," an element of a copyright infringement claim).

Regardless of whether TriTeq has sufficiently alleged ownership or infringement, TriTeq has alleged neither copyright registration, nor that an exception applies. Rather, TriTeq alleges an application for copyright registration. The mere filing of an application for copyright registration does not satisfy the statutory requirement that a copyright must be registered prior to the initiation of an infringement action. 17 U.S.C. § 411(b)(1) ("A certificate of registration satisfies the requirements of this section . . . ."); Gaiman v. McFarlane, 360 F.3d 644, 655 (7th Cir. 2004) ("[A]n application to register must be filed, and either granted or refused, before suit

7

can be brought." (citing 17 U.S.C. § 411(a)). TriTeq has not properly pleaded registration, a required element of a copyright infringement claim.

The Court notes that TriTeq applied for copyright registration on February 3, 2011, nearly a year after this lawsuit was initiated. That same day, TriTeq sought leave to file a second amended pleading to amend its declaratory judgment claim and to add a copyright infringement claim. With respect to the copyright infringement claim, TriTeq argued that it had learned that "Defendants published and disseminated Triteq's copyrighted drawings without Triteq's authorization" during Defendant Cohen's January 11, 2011 deposition. Mem. in Supp. of Triteq's Mot. for Leave to File Second Am. Pleadings 2. Ultimately, the Court granted TriTeq's motion for leave to file second amended pleadings. On July 21, 2011, TriTeq filed its Second Amended Complaint. However, its claim for copyright infringement was premature.

Although TriTeq has attached a certificate of registration to its response brief, "submissions in a response brief are not enough to cure the defects in a deficient complaint." Sweet, 953 F. Supp. at 230 (citations omitted). Indeed, TriTeq's certificate of registration cannot save its claim. "Satisfaction of the [§411] condition while the suit is pending does not avoid the need to start anew." Brooks-Ngwenya v. Thompson, 202 F. App'x 125, 127 (7th Cir. 2006) (citations omitted). Because TriTeq failed to satisfy the registration requirement prior to filing its copyright infringement claim, Count X is dismissed without prejudice. See id. ("If the condition can be satisfied while time remains in the statute of limitations, then a new suit may be filed and resolved on the merits.").

**D. TriTeq's Consumer Fraud and Abuse Act Claim (Count I)**

In Count I, TriTeq has raised issues under the CFAA, a conveniently available federal

8

statute that criminalizes certain activities in connection with computers. See 18 U.S.C. § 1030. Despite the criminal nature of the CFAA, it does provide a private civil cause of action under limited circumstance. "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). But a civil action "may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." Id. In other words, a plaintiff alleging a violation under § 1030(g) must allege the conduct involved one of the following factors:

> (I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value; (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; [or] (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

Id. (c)(4)(A)(i)(I)-(V).

TriTeq attempts to state claims against Cohen under § 1030(g) for violating § 1030(a)(2), (a)(4), and (a)(5)(A)-(C) based upon conduct involving "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030 (c)(4)(A)(i)(I). A plaintiff alleging violations of § 1030(a)(2) or (a)(4) must adequately allege either "damage" or "loss" to state a claim under § 1030(g). See, e.g., Motorola, Inc. v. Lemko Corp., 609 F. Supp. 2d 760, 767 (N.D. Ill. 2009). However, because damage is an express requirement of § 1030(a)(5), to state a claim under § 1030(g) for violation of § 1030(a)(5), a plaintiff must adequately allege "damage." Id. at 769. Thus, to state a claim under § 1030(g) for violation of § 1030(a)(5) based upon § 1030(c)(4)(A)(i)(I), a plaintiff must allege both "damage"

9

and a "loss" aggregating at least $5,000 in value.

The CFAA defines the term "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). In construing this term, courts have determined that "damage" refers to "the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" Farmers Ins. Exchange v. Auto Club Group, No. 11 C 1332, 2011 WL 4888889, at *4 (N.D. Ill. Oct. 13, 2011) (quoting Cassetica Software, Inc. v. Computer Scis. Corp., No. 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009) (additional citations omitted). It is well established that "the disclosure of trade secrets misappropriated through unauthorized computer access does not qualify as damage under the CFAA's definition of the term." Id. (collecting cases).

Here, TriTeq merely alleges that Cohen has "recklessly caused damage." Second Am. Compl. ¶ 112. TriTeq does not allege any facts to give color to this bare assertion of damage. The only harm that TriTeq appears to allege is that Cohen obtained and caused the transmission of TriTeq's trade secrets and confidential information. See id. ¶ 111-12. Such harm, however, does not constitute "damage" under the CFAA. TriTeq has not sufficiently alleged "damage" within the meaning of the CFAA.

TriTeq's conclusory allegations of "loss" are also deficient. Under the CFAA, "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). In construing the

term "loss," a split has emerged among the courts in this district. Compare Farmers Ins. Exchange, 2011 WL 4888889, at *6 ("[A] plaintiff can satisfy the CFAA's definition of loss by alleging costs reasonably incurred in responding to an alleged CFAA offense, even if the alleged offense ultimately is found to have caused no damage as defined by the CFAA." (citations omitted)), with Mintel Int'l Group, Ltd. v. Neergheen, No. 08 C 3939, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010) ("The alleged loss must relate to the investigation or repair of a computer or computer system following a violation that caused impairment or unavailability of data or interruption of service." (citations omitted)). Courts generally agree that "'[c]osts not related to computer impairment or computer damages are not compensable under the CFAA.'" SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (quoting Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (additional citations omitted); see also Farmers Ins. Exchange, 2011 WL 4888889, at *7; Mintel Int'l Group, Ltd., 2010 WL 145786, at *10. It appears, however, that the issue dividing courts is whether the costs associated with responding to an offense and/or conducting a damage assessment must follow a CFAA violation that caused damage.

Courts elsewhere have interpreted "loss" to mean the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), aff'd, 166 F. App'x 559 (2d Cir. 2006); see also Lasco Foods, Inc. v. Hall and Shaw Sales, Mktg. & Consulting, LLC, 600 F. Supp. 2d 1045, 1052 (E.D. Mo. 2009); Koch Indus., Inc. v. Does, No. 2:10CV1275DAK, 2011 WL 1775765, at *8 (D. Utah May 9, 2011); J.T. Shannon Lumber Co., Inc. v. Gilco Lumber, Inc., No. 2:07CV119-SA-SAA, 2010 WL 234996, at *10 (N.D. Miss. Jan.

11

15, 2010); L-3 Commc'ns Westwood Corp. v. Robicharux, No. 06-0279, 2007 WL 756528, at *3 (E.D. La. Mar. 8, 2007); Chas. S. Winner, Inc. v. Polistina, No. 06-4865 (NLH), 2007 WL 1652292, at *4 (D.N.J. June 4, 2007); Frees Inc. v. McMillian, No. 05-1979, 2007 WL 2264457, at *3 (W.D. La. Aug. 6, 2007); Sw. Airlines Co. v. Harris, No. 3:07-CV-0583-D, 2007 WL 3285616, at *4 (N.D. Tex. Nov. 2, 2007).

Upon review of the statutory definition of "loss" and competing case law, the Court finds that "loss" refers to: (1) the cost of investigating or repairing a computer or computer system following a violation that caused damage to a computer or computer system, or (2) revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service. The structure and language of the CFAA suggests that Congress intended to restrict civil actions brought under the CFAA. Further, in enacting the CFAA, "Congress was concerned with . . . attacks by virus and worm writers, on the one hand, which come mainly from the outside, and attacks by disgruntled employees who decide to trash the employer's data on the way out (or threaten to do so in order to extort payments), on the other." Int'l Airport Ctrs., L.L.C. v. Citrin, 440 F.3d 418, 420 (7th Cir. 2006). Thus, with respect to the first meaning of "loss," to permit a plaintiff to state a CFAA claim by simply alleging costs incurred in responding to an alleged offense or conducting a damage assessment without alleging that the offense caused damage would impermissibly broaden the applicability of the CFAA to provide seemingly unfettered access to federal courts to adjudicate state law issues incidental to computer use.

Here, TriTeq summarily alleges that it incurred losses "for responding to and investigation of Defendant Cohen's misconduct, including damage and security assessments." Second Am. Compl. ¶ 113. TriTeq has not alleged that the costs it incurred followed a CFAA

offense that damaged its computers or computer systems, or that its service was interrupted. Accordingly, TriTeq has failed to allege that it suffered any "loss" under the CFAA. Because TriTeq has failed to allege either damage or loss cognizable under the CFAA, Count I is dismissed.

Because the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over TriTeq's state law claims. See 28 U.S.C. § 1367(c)(3). Accordingly, TriTeq's state law claims are dismissed without prejudice.

**E. Motion for Sanctions**

Defendants argue that "Plaintiff's misleading allegations in Count V and X warrant sanctions." Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. With Prejudice In Lieu of Answer Pursuant to F. R. Civ. P. 12(b)(1) & 12(b)(6) & for Sanctions Pursuant to F.R. Civ. P. 11, at 22. Rule 11 requires that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Additionally, "[t]he motion must be served on the opposing party but shall not be filed with or presented to the court unless within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Methode Elecs., Inc. v. Adam Techs., Inc., 371 F.3d 923, 926 (7th Cir. 2004) (internal quotation marks and citation omitted). Because Defendants have embedded a motion for sanctions within their motion to dismiss, they have failed to comply with Rule 11. The Court need not determine whether Defendants satisfied the twenty-one day "safe harbor" requirement. Defendants' motion for sanctions is denied.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss TriTeq's Second Amended Complaint and for sanctions is granted in part and denied in part. The Court declines to exercise supplemental jurisdiction over TriTeq's remaining state law claims, and therefore the state law claims are dismissed without prejudice.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: February 1, 2012